IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Main Street Business Funding, LLC, | Case No. 19-10598 (BLS) |
| Debtors | **Docket Reference No. 156** |

## OPINION[1]

Before the Court are the Motion of John P. Lane to Require Trustee to Dispose of Certain Funds (the "Motion")[2] and the Trustee's opposition thereto.[3] Mr. Lane holds a secured claim in this corporate Chapter 7 case, and he seeks a ruling that his liens extend to the proceeds of a litigation settlement that the Trustee has entered into and the Court has previously approved.[4] For the reasons that follow, the Court finds that the settlement proceeds are indeed included in Mr. Lane's collateral, as they are the product of accounts or loans in which the record reflects he holds a properly perfected security interest.

## BACKGROUND

This bankruptcy case was commenced as an involuntary proceeding by several petitioning creditors on March 20, 2019. The Court entered an Order for Relief on May 9, 2019 (the "Petition Date").[5] Donald Beskrone was appointed to serve as the Chapter 7 Trustee on

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedures. *See* Fed. R. Bankr. P. 7052, 9014(c). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).
[2] Docket No. 156.
[3] Docket No. 167.
[4] The Court notes that disputes over the extent, validity or priority of liens are typically raised in the context of an adversary proceeding. *See* Fed. R. Bankr. P. 7001(2). However, Mr. Lane is representing himself and the Court will liberally construe his pleadings to afford the opportunity to rule on the merits of this dispute notwithstanding a procedural misstep. Further, no party has claimed prejudice or otherwise objected to consideration of this dispute on the record developed herein.
[5] Docket No. 11.

May 10, 2019. Prior to the bankruptcy filing, Main Street Business Funding, LLC (hereinafter the "Company" or the "Debtor") was engaged in the business of factoring receivables.[6]

Mr. Lane is a creditor of the Debtor and asserts that he has a perfected security interest in certain collateral. More specifically, on February 1, 2016, Mr. Lane purchased a term promissory note (the "Promissory Note") from the Debtor in the amount of $852,500. In return, the Debtor executed a security agreement (the "Security Agreement") granting liens in favor of Mr. Lane in substantially all of the Debtor's assets. The Security Agreement governing the Note defines the term "Collateral" (in relevant part) as follows:

> [A]ll tangible and intangible personal property of Debtor, wherever located and whether now owned or hereafter acquired, including but not limited to, all accounts, contract rights, general intangibles, chattel paper, machinery, equipment, goods, inventory, fixtures, investment property, letter of credit rights, supporting obligations, books and records, deposit accounts, bank accounts, documents and instruments, together with all proceeds thereof . . .[7]

The record reflects that Mr. Lane perfected his security interest on June 21, 2018. On July 22, 2019, Mr. Lane timely filed a proof of claim in the amount of $1,287,000. Mr. Lane alleges that $852,500 of that amount is the secured claim owed to him by the Debtor.[8]

In prior litigation in this Court, Mr. Lane contended that certain funds resulting from other litigation settlements entered into by the Chapter 7 Trustee were subject to his perfected security interests.[9] By an opinion dated June 8, 2022, the Court ruled that those

---

[6] Adv. Complaint at ¶ 15.
[7] *See* Security Agreement, ¶ 1(a) (Docket No. 156, Ex. B).
[8] Claim No. 2 at ¶ 9.
[9] *In re Main Street Business Funding LLC*, 642 B.R. 141 (Bankr. D. Del. 2022), *aff'd*, 2023 WL 4420519 (D. Del. Jul. 10, 2023).

settlement proceeds related to commercial tort claims that were not covered by Mr. Lane's liens as a matter of Pennsylvania law.[10]

The Trustee has now settled a different lawsuit that he commenced against Mr. Robert Goggin, the founder and former President of the Debtor. As discussed in detail below, the Trustee's complaint (the "Complaint")[11] against Mr. Goggin (hereinafter, the "Goggin Litigation") alleges that while he was President of the Debtor, Mr. Goggin caused the Company to make a series of loans or advances to him in an aggregate amount totaling over $1.25 million. The Complaint alleges that the loans were made either directly to Mr. Goggin or to third parties for his benefit, and that the loans were required to be repaid by Mr. Goggin.[12] Notwithstanding demand, Mr. Goggin did not repay these loans.

The Trustee has now settled with Mr. Goggin and received certain payments from him.[13] Mr. Lane asserts that the funds derived from the settlement of the Goggin Litigation are subject to his perfected security interests. The Trustee responds that the settlement proceeds here again arise from the resolution of commercial tort claims, which are not covered by Mr. Lane's liens.

## DISCUSSION

A.  The Goggin Litigation

Prior to the Petition Date, Mr. Goggin was the sole or majority owner of the Company and served as its President.[14] After an investigation, the Trustee determined that Mr. Goggin had

---

[10] *Id.* at 144.
[11] Docket No. 1, Adv. Proc. No. 22-50454 (BLS).
[12] Adv. Complaint at ¶¶ 22-24.
[13] The precise amounts of the settlement were sealed at the request of the parties. *See* Settlement Order at Adv. Docket No. 19.
[14] Adv. Complaint at ¶ 8-9.

caused the Company to make a series of loans or advances to him. The preliminary statement of the Complaint recites:

> This is an adversary proceeding brought by the Trustee on behalf of the Estate to hold Goggin accountable for certain advances and/or loans made to him by the Debtor that Goggin has failed or refused to repay.

The Complaint identifies dozens of Advances (as that term is defined in the Complaint) to Mr. Goggin totaling $1,250,778.71.[15] In particular, the Complaint alleges that Advances were made to Mr. Goggin personally in the amount of $834,000 and further alleges personal taxes were paid by the Company for Mr. Goggin's benefit in the amount of $105,477.70.

The Trustee describes in his Complaint the results of his investigation. The predicate for his claims against Mr. Goggin was found in the Company's accounting records:

> Goggin and the Debtor understood at all relevant times that all Advances were either loans from the Debtor to Goggin, and/or were payments made to third parties for the benefit of Goggin.
>
> Goggin and the Debtor understood at all relevant times that all amounts due under the Advances were required to be repaid in full by Goggin.
>
> Goggin was (or should have been) well aware of the existence of his substantial debt to the Debtor. Each of the Advances was recorded in the Debtor's Quick Books accounting system, a system that was utilized and maintained in the ordinary course of the Debtor's operations. A listing of the Advances (including payments made directly to Goggin, as well as payments made to third parties on his behalf) drawn from the Debtor's Quick Books accounting system is attached hereto as Exhibit A, which each such Advances identified by (i) payee, (ii) form of payment; (e.g., wire, check, EFT), (iii) date of payment, (iv) receipt/clearing date, a applicable, (v) amount of payment and (vi) the Debtor's bank account identifier.[16]

The Trustee's Complaint states nine separate counts, each seeking recovery of Advances that are listed with specificity (date, amount, check number and bank account) on a spreadsheet attached as Exhibit A to the Complaint. The question before the Court is whether the Goggin

---

[15] Adv. Complaint at ¶ 22.
[16] Adv. Complaint at pp. 1-2.

litigation is an action sounding in tort or in contract.  If it is a commercial tort claim, Mr. Lane's liens will not reach the proceeds as a matter of Pennsylvania law for reasons explained by the Court in its prior Opinion.  If the Goggin litigation is at its core a suit for breach of contract, Mr. Lane's liens may indeed extend to the settlement proceeds.  To answer this question, the Court must analyze the "gist of the action" doctrine.

Pennsylvania courts have recognized that the gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims."[17] "The simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other" but the doctrine "forecloses a party's pursuit of a tort action for the mere breach of contractual duties, 'without any separate or independent event giving rise to the tort.'"[18]

The doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.[19] Simply put, "[t]he gist of the action doctrine 'precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.'"[20]

---

[17] *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619 (E.D. Pa. 2010) (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.*, 2002 Pa. Super. 347, 811 A.2d 10, 14 (Pa. Super. 2002)).
[18] *Id.*, 745 F. Supp. 2d at 619 (quoting *eToll*, 811 A.2d at 14; and *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3d Cir. 2001)).
[19] *Cola*, 745 F. Supp. 2d at 619-20 (E.D. Pa. 2010); *see Creighton Prop. Holdings, LLC v. Lewis Bros., Inc.*, Civil Action No. 2:21-cv-279, 2021 U.S. Dist. LEXIS 191076, at *9 (W.D. Pa. Oct. 4, 2021).
[20] *3SI Sec. Sys. v. Protexk Elecs., Inc.*, No 07-4681, 2008 U.S. Dist. LEXIS 56283, at *1 (E.D. Pa. July 23, 2008) (citing *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. Ct. 1992)).

"Whether the gist of the action applies in any particular setting is a question of law."[21] The difference between a cause of action for tort and breach of contracts is that "tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreement between particular individuals."[22]

The Court will consider each claim in the Complaint individually under the gist of the action doctrine.[23] The Court starts with Count I for breach of contract. Obviously, this Count sounds in contract. Likewise, Count II for promissory estoppel and Count IV for account stated also sound in contract.

Count III seeks recovery upon a theory of unjust enrichment. In Pennsylvania, a plaintiff must show the following elements for a claim of unjust enrichment: "(1) the plaintiff conferred a benefit upon the defendant; (2) an appreciation of such a benefit by the defendant; and (3) the defendant accepted and retained such benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment of value."[24]

Pennsylvania case law teaches that a cause of action "based on unjust enrichment is an equitable action which sounds in quasicontract, a contract implied in law."[25] The Court finds that the unjust enrichment claim here sounds in contract, rather than tort.

Count V seeks recovery against Mr. Goggin for conversion. Pennsylvania law defines conversion as the "deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification."[26] The Complaint alleges that Mr.

---

[21] *Cola,* 745 F. Supp. 2d at 620.
[22] *Bash,* 601 A.2d at 829.
[23] The Court makes no ruling or determination upon the merits of the claims alleged in the Goggin Litigation.
[24] *Cola*, 745 F. Supp. 2d at 625 (citing *Global Ground Support, LLC v. Glazer Enter., Inc.*, 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008)).
[25] *Id.* at 625.
[26] *Id.* at 622.

6

Goggin's actions in diverting payment of the Advances to himself deprived the Debtor of valuable property, was done without consent and without lawful justification.[27] The conversion claim alleged in the Complaint sounds in tort, rather than breach of contract.

Count VI asserts a claim for recovery of constructively fraudulent transfers under state law. Pennsylvania law sets forth the elements of a constructive fraudulent conveyance claim as follows:

> Constructive Fraud. Alternatively, the Trustee seeks to avoid and recover the transfer of the Debtor's home as an instance of constructive fraud. In that regard, the PUVTA provides:
>
> > (a) General Rule. – A transfer made or obligation incurred by a debtor is voidable as to a creditor's claim arose before or after the transfer was made or the obligation was incurred. If the debtor made the transfer or incurred the obligation:
>
> …
>
> > (2) without receiving equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (i) was engaged or about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[28]

A claim for recovery of constructively fraudulent transfers, being predicated upon allegations of fraud and not on any contractual relationship between transferor and transferr, is a claim that sounds in tort.

Count VII asserts a claim for breach of fiduciary duty by Mr. Goggin. As noted above, the Complaint alleges that he was the sole or majority shareholder of the Debtor as well as its

---

[27] *Id.* at ¶¶ 101-02, 128-29.
[28] *In re Carbone*, 615 B.R. 76 (2020).

President.  To establish a breach of fiduciary duty under Pennsylvania law, a plaintiff must prove that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed, that the plaintiff suffered injury, and that the agent's failure to act solely for the plaintiff's benefit was a real factor in bring about those injuries.[29]

"A breach of fiduciary duty claim is barred by the gist of the action doctrine if the duty is grounded in contractual obligations."[30] In evaluating whether breach of duty claims are barred by the "gist of the action" doctrine, courts generally group them into two categories.[31] First, "if the fiduciary duty at issue goes 'beyond the particular obligations contained in' the parties' contract", then it is not barred.[32] Second, if the "[p]laintiff put forth no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside" of their contractual obligations, then the claims are barred by the "gist of the action" doctrine.[33]

The Trustee alleges that Mr. Goggin was President and was in control of the Company at all relevant times.  In addition to running the day-to-day operations of the Company, Goggin operated and oversaw conduct of the factoring business; he presided over the accounts; he apportioned the money that entered the business and left the business.  The Complaint alleges he owed a fiduciary duty the Company, which included obligations of loyalty, due care, fairness, good faith and full disclosure.[34]  The Court notes that the request for relief or recovery under Count VII is precisely the same as that sought in Count I for breach of contract:  payment of the

---

[29] *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998).
[30] *Cola*, 745 F. Supp at 620 (citing *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008)).
[31] *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 234-35 (E.D. Pa. 2017).
[32] *Id.* at 235 (citing *Bohler-Uddeholm Am., Inc. v. Ellwood Grp. Inc.*, 247 F.3d 79, 105 (3d Cir. 2001)).
[33] *Cola*, 745 F. Supp at 621; *see DePuy Synthes*, 259 F. Supp. 3d at 235.
[34] Adv. Complaint at ¶¶ 82-88.

Advances made to Mr. Goggin by the Company in the amount set forth in the schedule attached to the Complaint.

"Various courts have held that a breach of fiduciary duty claim will survive the 'gist of the action' doctrine because the fiduciary obligations between the [parties] are not generally defined in their agreement, but imposed by the larger social policies embodied in the law of torts."[35] The Court concludes the breach of fiduciary duty claims alleged in the Complaint sound in tort.[36]

   B. <u>Is the Goggin Litigation a Commercial Tort Claim or a Contract Suit?</u>

As discussed immediately above, the Trustee's Complaint contains counts sounding both in tort and contract. However, applying the principles laid out by courts construing Pennsylvania law, this Court concludes that the Trustee's suit is, at its core, a breach of contract suit.

The Trustee alleges that Mr. Goggin received Advances totaling over $1.25 million, and that those debts to the Company were duly recorded as accounts receivable on the Company's books. The Trustee has therefore commenced this litigation to recover that debt. The allegations in the Goggin Litigation are not complex: he borrowed or received money from the Company; these debts were required to be repaid; demand has been made and Mr. Goggin has not paid; and no superseding defense to liability on the debt has been interposed.

It is true that the Trustee has asserted several counts that sound in tort, but the undisputed record and the context reveal that these theories have been offered in relatively standard alternative pleading to cover all approaches. Importantly, all of the putative tort Counts use as

---

[35] *Rahemtulla v. Hassam,* 539 F. Supp. 2d 755, 779 (M.D. Pa. 2008).
[36] The final two counts of the Complaint seek turnover under Bankruptcy Code § 542 and disallowance of claims under Bankruptcy Code § 502(d) and (j). These Counts do not factor materially into the gist of the action analysis.

9

their measure of damages the calculation of the unpaid Advances that forms the basis of the contract claims.

The Trustee stresses that, in forcing or directing the Company to tender the Advances to Mr. Goggin at a time when the Company was approaching or in financial distress, he breached his fiduciary duties to the Company. This may be the case, and the Trustee's count for breach of fiduciary duty is certainly not without merit on the well-pled allegations in the Complaint. But an alternative count or theory of recovery in the Complaint will not serve to transform a relatively routine debt action into a tort suit.

Having concluded that the Goggin Litigation is a contract action, the Court turns next to whether the proceeds from settlement of that lawsuit are covered by Mr. Lane's liens. The answer to that question is yes.

The Advances described with particularity in the Complaint are either accounts receivable owed by Mr. Goggin to the Debtor, or loans made by the Debtor to Mr. Goggin that, as of the Petition Date, remained unforgiven and unpaid. Mr. Lane demands in his Motion that the Trustee pay over to him the monies the estate has received in the Goggin Litigation. Having determined that the Goggin Litigation was a suit commenced to recover a debt owed to the Debtor, the Court must look now to the Security Agreement executed by Mr. Lane and by the Debtor.

That instrument contains a commercially standard and broad definition of the Debtor's assets in which Mr. Lane enjoys a lien. As noted briefly above, the liens granted to him by the Debtor extended to substantially all of its assets:

> WHEREAS, in order to secure loans made by Secured Party to Debtor and to induce Secured Party to revise the terms of such loans, Debtor and Secured Party [sic] pursuant to which Debtor granted a security interest to Secured Party in certain assets as more fully set forth therein;

10

\* \* \* \*

> (a) The term "Collateral" means all tangible and intangible personal property of Debtor, wherever located and whether now owned or hereafter acquired, including but not limited to, all accounts, contracts rights, general intangibles, chattel paper, machinery, equipment, goods, inventory, fixtures, investment property, letter of credit rights, supporting obligations, books and records, deposit accounts, bank accounts, documents and instruments, together with all proceeds thereof . . . .[37]

The monies owed by Mr. Goggin fall squarely under the categories listed as "accounts" or alternatively "contract rights [and] general "intangibles" in the Security Agreement. That document also provides that Mr. Lane's liens will extend to any proceeds arising from property which constitutes his collateral:

> In addition, the term "proceeds" shall have the meaning given to it in the UCC and shall additionally include but not be limited to, whatever is realized upon the use, sale, exchange, license, or other utilization of or any disposition of the Collateral, rights arising out of the Collateral and collections and distributions on the Collateral, whether cash or non-cash, and all proceeds of the foregoing.[38]

Based upon the foregoing, Mr. Lane has established that the proceeds realized by the estate from the settlement of the Goggin Litigation are part of his collateral under the Security Agreement and he is entitled to distribution of those funds.

## **CONCLUSION**

The Motion is granted, and the Trustee's objection is overruled. The parties are requested to confer and submit a form of order consistent with this ruling within 14 days of the date hereof.

Dated: March 26, 2024

                                                       Brendan Linehan Shannon
                                                     United States Bankruptcy Judge

---

[37] *See* Security Agreement, ¶ 1(a) (Docket No. 156, Ex. B).
[38] *Id.*